974 So.2d 72 (2007)
KIMPTON HOTEL & RESTAURANT GROUP, INC. and First Orleans Hotel Associates, L.P.
v.
LIBERTY MUTUAL FIRE INSURANCE COMPANY.
Nos. 2007-CA-1118, 2007-CA-1209, 2007-C-1310.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 2007.
*73 Campbell E. Wallace, Jonathan C. McCall; Douglas L. Grundmeyer, Chaffe McCall, L.L.P., New Orleans, LA, for Kimpton Hotel & Restaurant Group, L.P. and First Orleans Hotel Associates, L.P.
Judy Y. Barrasso, H. Minor Pipes, III, Barrasso Usdin Kupperman Freeman & Sarver, LLC., New Orleans, LA, and Christopher S. Finazzo, Rachel R. Hager, Budd Lanier, PC, Short Hills, NJ, for Liberty Mutual Fire Insurance Company.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
TERRI F. LOVE, Judge.
This appeal arises from flood damage to the Hotel Monaco and Cobalt Restaurant as a result of Hurricane Katrina. Hotel Monaco and Cobalt Restaurant were insured for flood damage by Liberty Mutual Fire Insurance Company. The business entities representing Hotel Monaco and Cobalt Restaurant asserted, in a motion *74 for partial summary judgment, that the flood insurance limit was $10 million. Liberty Mutual Fire Insurance Company claimed that the limit was $2.5 million. The trial court held that the insurance contract's "clear and plain meaning" insured the Hotel Monaco and Cobalt Restaurant for $10 million in flood damages. We find that the insurance contract unambiguously limits flood damage to $10 million and affirm.
A writ was consolidated with the appeal regarding a memorandum that Liberty Mutual Fire Insurance Company received from an insurance broker during discovery. The trial court held that the memorandum was not privileged and did not constitute work-product. We find that the trial court did not abuse its discretion and deny the writ.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The Hotel Monaco and Cobalt Restaurant (collectively "the Hotel"), located at 333 Saint Charles Avenue, suffered flood damages as a result of Hurricane Katrina. First Orleans Hotel Association, L.P., the owner of the Hotel, and Kimpton Hotel & Restaurant Group, L.P., the manager of the Hotel (collectively "Kimpton"), insured the Hotel with a multiple property insurance policy ("Policy") from Liberty Mutual Fire Insurance Company ("Liberty"). The Policy covered property damage and business interruption insurance. The basement level of the Hotel, which housed the Hotel's electrical vault, flooded. Kimpton sought $10 million from Liberty to repair the damage. Kimpton's first written proof of loss, totaling $10,708,613, was submitted on October 25, 2005. The second proof of loss, submitted on February 24, 2006, added an additional $6,257,044 in damages. Liberty refused to tender $10 million stating that the Policy only covered $2.5 million in flood damages.
Kimpton filed a petition for declaratory judgment and damages against Liberty. Liberty then filed a notice of removal. However, the United States District Court for the Eastern District of Louisiana remanded the case to the Civil District Court because Liberty did not show that the parties were diverse at the time of removal. Kimpton later added the Sewerage and Water Board ("S & WB") and AEGIS, Limited ("AEGIS"), the liability insurer of Entergy New Orleans, Inc., as defendants alleging their negligence contributed to the flood damage.
Liberty filed an exception of forum non conveniens, which the trial court denied. The S & WB filed a motion for summary judgment, which the trial court granted dismissing the S & WB with prejudice, predicated upon the fact that nothing in the S & WB's custody interfered with Kimpton's electrical vault.
Kimpton filed a motion for partial summary judgment alleging that according to the four corners of the Policy, the Policy covered $10 million in flood damages. The trial court granted Kimpton's motion for summary judgment. The trial court also granted Kimpton's motion to strike extrinsic evidence, Kimpton's motion to strike scandalous language, and Liberty's motion to compel a second deposition of John Tastor ("Mr. Tastor"). The trial court denied Kimpton's motion to strike and exclude inadvertently produced documents.
Kimpton then sought writs to this Court regarding the motion to strike and exclude inadvertently produced documents. Kimpton and Liberty sought to certify the trial court's ruling on the motion for partial summary judgment as final and appealable. Once designated as final and appealable, Liberty appealed the trial court's *75 granting of Kimpton's motion for partial summary judgment. Kimpton's writ was consolidated with this devolutive appeal.

MOTION FOR PARTIAL SUMMARY JUDGMENT
Appellate courts review partial summary judgments using the de novo standard of review. Wingrave v. Hebert, 06-1240, p. 5 (La.App. 4 Cir. 5/9/07), 964 So.2d 385, 389. Summary judgments are favored and "designed to secure the just, speedy, and inexpensive determination" of actions. La. C.C.P. art. 966(A)(2). "[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law," then summary judgment will be granted. La. C.C.P. art. 966(B). The mover bears the burden of proof. La. C.C.P. art. 966(C)(2). "[I]f the movant will not bear the burden of proof at trial on the matter that is before the court . . . the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense." La. C.C.P. art. 966(C)(2). In that case, the movant must "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(C)(2). "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La. C.C.P. art. 966(C)(2).
Liberty asserts that the trial court erred in granting Kimpton's motion for partial summary judgment. Liberty avers that endorsement RM1132 does not change the liability limits contained in endorsement RM1109. Instead, Liberty avers that RM1132 only changed the policy to reflect that the Hotel was located in zone B or X, which was insured for flood damage, as opposed to zone A.
The Policy does not cover flood losses according' to the exclusions listed on RM1003. However, endorsement RM1109 "changes" and/or "modifies" the Policy to include flood coverage on particular properties. RM1109 states, in part: "[w]e will pay for direct physical loss to covered property caused by flood at or within the states and locations shown on the Schedule of this endorsement." Further, RM1109 contains a schedule of liability as follows, in pertinent part:

 Limit of Limit of
 Liability Liability
 Per In any one
 State or Location Occurrence policy year
_____________________________________________________________________________________________________
Any covered property situated in zone B or X shaded as defined in item
4.(B) of this endorsement. $10,000,000 $10,000,000
_____________________________________________________________________________________________________
New Orleans Hotel Monaco and Cobalt Restaurant $ 2,500,000 $ 2,500,000
_____________________________________________________________________________________________________
Any Covered Property at a New Location $ 1,000,000 $ 1,000,000
_____________________________________________________________________________________________________
Any Covered Property at an Unscheduled Location $ 100,000 $ 100,000
_____________________________________________________________________________________________________
Any covered property at a covered location not situated in the areas
defined on the schedule of states and locations or indicated in item 4 of
this endorsement. $50,000,000 $50,000,000
_____________________________________________________________________________________________________

*76 Endorsement RM1132 then states that it also "changes" and/or "modifies" Kimpton's insurance coverage regarding flood damage. RM1132 reads, in pertinent part:
 2. The location(s) shown in Schedule B of this endorsement
 have been identified as being situated in zone B or X
 shaded which is the area defined by the Federal Emergency
 Management agency (FEMA) as being subject to inundation by a
 one-hundred (100) to five-hundred (500) year flood
 event. (One-hundred (100) to five-hundred (500) year
 flood plain).
 Schedule B
 No. Location Address
 26 1095 Rollins Road, Burlingame, CA 94010
 36 333 Saint Charles Avenue, New Orleans, LA 70130
 37 10500 S. De Anza Blvd., Cupertino, CA 95014
An insurance policy is a contract.[1] The Louisiana Civil Code dictates how contracts should be interpreted. Determining the common intent of the parties is the first step for interpreting a contract. La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. When a provision in a contract is susceptible of different meanings, an interpretation that renders the provision effective and not ineffective must be utilized. La. C.C. art. 2049. Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. Insurance contracts "shall be construed according to the entirety of its terms and conditions . . . and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. R.S. 22:654. However, "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. C.C. art. 2056.
RM1109 provides that the Hotel is insured for flood damage up to $2.5 million. However, RM1132 provides that it "changes" and/or "modifies" the Policy and that the Hotel should be included in the "zone B or X" category. We find that the words of the Policy are clear and explicit. The Hotel was always physically located in the "zone B or X" category. Therefore, the only interpretation of RM1132's provision would be to increase the flood damage liability for the Hotel to $10 million. Otherwise, RM1132 would have no purpose as it related to the Hotel.
The use of extrinsic evidence to determine the amount of flood coverage is not warranted as we find that the words of the Policy are "clear and explicit." Therefore, we need not consult other documents to search for the intent of the parties. Accordingly, we find that the Policy insured the Hotel for up to $10 million in flood damages and affirm the trial court's granting of Kimpton's motion for summary judgment.

WRIT APPLICATION
Kimpton filed a supervisory writ *77 application[2] with this Court on September 5, 2007, seeking review of the trial court's denial of Kimpton's motion to strike and exclude inadvertently produced documents.
Kimpton alleges that it inadvertently produced a September 1, 2005 memorandum ("Tastor Memo") from Mr. Tastor, the Arthur J. Gallagher & Company of California[3] representative heading the Kimpton account team, to Melinda Tisch, Kimpton's assistant general counsel/Vice President. The. Tastor Memo discussed Mr. Tastor's interpretation of the Hotel's flood coverage. Kimpton alleges that the Tastor Memo is subject to either the attorney-client privilege or the work-product doctrine.
As the reviewing court, this Court must determine if the trial court abused its discretion in denying Kimpton's motion to strike and exclude inadvertently produced documents. Dixon v. WinnDixie Louisiana, Inc., 93-1627 (La.App. 4 Cir. 5/17/94), 638 So.2d 306, 312. Inadvertent disclosure of a document protected by the attorney-client privilege or work-product doctrine does not waive the protections. La. C.C.P. art. 1424(D).
The work-product doctrine provides that the "court shall not order the production or inspection of any writing, or electronically stored information, obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial. . . ." La. C.C.P. art. 1424(A). Additionally, "the court shall not order the production or inspection of any part of the writing, or electronically stored information, that reflects the mental impressions, conclusions, opinions, or theories of an attorney." La. C.C.P. art. 1424(A).
The attorney-client privilege allows the client to refuse to disclose communication:
(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
(2) Between the lawyer and a representative of the lawyer.
(3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
(4) Between representatives of the client or between the client and a representative of the client.
(5) Among lawyers and their representatives representing the same client.
(6) Between representatives of the client's lawyer.
La. C.E. art. 506(B). The Louisiana Code of Evidence defines a client's representative as:
(a) A person having authority to obtain professional legal services, or to act on advice so obtained, on behalf of the client.
(b) Any other person who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client.
La. C.E. art. 506(A)(2). Further, a representative of the lawyer, "is a person engaged by the lawyer to assist the lawyer in the lawyer's rendition of professional legal services." La. C.E. art. 506(A)(4).
In order for a document to be protected by the work-product doctrine, the document must be prepared in "anticipation of litigation or in preparation for trial." The Tastor Memo was not prepared in anticipation *78 of litigation or in preparation for trial as Mr. Tastor typed the Tastor Memo on September 1, 2005, prior to Kimpton making a claim for flood damages. Additionally, the Tastor Memo is not covered by the attorney-client privilege as Mr. Tastor prepared the Tastor Memo in the ordinary scope of his business duties as an insurance consultant and he was not a representative of the client. Therefore, we do not find that the trial court abused its discretion and deny the writ.

DECREE
For the above mentioned reasons, we find that the Policy unambiguously provided Kimpton with $10 million in coverage for flood damage to the Hotel. Additionally, we find that the trial court did not abuse its discretion in finding that the Tastor Memo was not privileged or a work product. Therefore, we affirm the granting of the motion for summary judgment and deny the writ.
AFFIRMED; WRIT DENIED.
BELSOME, J., concurs in the result with reasons.
BELSOME, J., concurs in the result with reasons.
I concur with result of the majority opinion but not with its analysis. More specifically, I disagree that a clear unambiguous reading of the policy provides for $10 million dollars of flood coverage for Hotel Monaco and Cobalt Restaurant. It is undisputable that endorsement RM1109 makes a distinction between "[a]ny covered property situated in zone B or X shaded as defined in item 4.(B) of this endorsement" and "New Orleans Hotel Monaco and Cobalt Restaurant" setting forth flood damage liability coverage at $10 million and $2.5 million respectively.
However, a reading of endorsement RM1132 under the Flood Zone Designation Schedule, which is identified as modifying RM1109, specifically lists Hotel Monaco and Cobalt Restaurant as a location that falls into the category of property situated in zone B or X. I find that endorsements RM1109 and RM1132 create two equally reasonable interpretations of what limit of liability for flood applies to Hotel Monaco and Cobalt Restaurant. Accordingly I find the policy language to be ambiguous. See Elmer v. Washington Nat'l Ins. Co., 308 So.2d 312, 314 (La.App. 3 Cir. 2/12/1975)
Due to the ambiguity within the contract the Court must look to the parties' intent. Succession of Fannaly v. Lafayette Insurance Co., 01-1144, p. 2 (La.01/15/02), 805 So.2d 1134, 1137. Under the general rules of contract the Court should not look beyond the four corners of the insurance contract to ascertain the intent of the parties. See Ashire v. Vermilion Parish School Board, 02-2881, p. 5 (La.6/27/03), 848 So.2d 552, 555 citing Ortego v. State, Dept. of Transp. and Dev., 689 So.2d 1358 (La.2/25/97). However if a question remains, the unclear language is construed in favor of the insured. La. C.C. art. 2056 and Succession of Fannaly, 01-1144, p. 4, 805 So.2d at 1138. Because the language of the two provisions prevent a clear unambiguous determination of the policy flood limit, La. C.C. article 2056 directs us to find in favor of the insured, thus this Court must interpret the provisions as providing $10 million of flood coverage. For these reasons I concur in the result reached by the majority.
NOTES
[1] "A contract is an agreement by two or more parties whereby obligations are created. modified, or extinguished." La. C.C. art. 1906.
[2] The supervisory writ application was consolidated with the appeal sub judice.
[3] An international insurance broker.