DANIEL L. DYSART, Judge.
bln this appeal, plaintiffs contend that the trial court erred in granting the defendants’ Motions for Summary Judgment and dismissing their lawsuits. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiffs filed two lawsuits to halt the permitting of non-conforming multiunit buildings and to shut down a nineteen-room boarding house. The plaintiffs also appealed to the trial court two decisions of the City’s Board of Zoning Adjustments (“BZA”). In addition, one of the defendants filed an appeal to the trial court from a decision of the BZA. These five cases were consolidated. The parties filed Cross Motions for Summary Judgment. The trial court ruled in favor of the defendants, granting summary judgment and dismissing the plaintiffs’ motions.
The instant appeal concerns five New Orleans properties: 209 South Jefferson Davis Parkway, 312-314 South Jefferson Davis Parkway, 316-318 South Jefferson Davis Parkway, 320-322 South Jefferson Davis Parkway, and a nineteenjroom2 rooming house. 209 South Jefferson Davis Parkway is owned by Defendant/Appellee, South Jefferson Davis Parkway, LLC (“SJDP”). The undisputed facts indicate that SJDP was the owner of a five-plex at 209 South Jefferson Davis Parkway, and as of August 29, 2005, the premises enjoyed a “non-conforming use” status.
After Hurricane Katrina, the City issued 3 permits to 209 South Jefferson Davis Parkway: a commercial, emergency permit dated March 9, 2006; a mechanical permit dated February 28, 2007, and an electrical permit dated March 23, 2007. The City’s ACCELA[1] permit manager *996 website printout dated April 7, 2008 indicated that all three permits were active as of that date. The property was completed and occupied by February 1, 2008.
The properties located at 312-314, 316— 318 and 322 South Jefferson Davis Parkway are owned by Property Consolidation, Inc. 312-314 South Jefferson Davis Parkway, a five-plex; 316-318 South Jefferson Davis Parkway, a seven-plex; and 320-322 South Jefferson Davis Parkway, a seven-plex, all enjoyed nonconforming use status as of August 29, 2005. The City issued a permit to repair 322 South Jefferson Davis Parkway on March 1, 2006. Permits were issued for 312-314 South Jefferson Davis Parkway and 316-318 South Jefferson Davis Parkway on March 2, 2006. 312-314 South Jefferson Davis Parkway was completed and inhabited by March 1, 2007; 316-318 South Jefferson Davis |sParkway has been continuously inhabited since 1998; and 322 South Jefferson Davis Parkway was completed and inhabited by August 24, 2007.

DISCUSSION

Summary judgments are reviewed de novo. Kimpton Hotel & Rest. Group, Inc. v. Liberty Mut. Fire Ins. Co., 07-1209, p. 3 (La.App. 4 Cir. 12/19/07), 974 So.2d 72, 75. Appellate courts use the “same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e. whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.” Supreme Sens, and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638.
Plaintiffs/Appellants contend that the defendants have failed to make timely repairs as required by the City’s Comprehensive Zoning Ordinance (“CZO”) Section 13.3.2 “Vacancy as Discontinuance,” which was amended in 1998. Plaintiffs argue that consistent with the 1998 changes to CZO Section 13.2, the partial use of a building (i.e. one unit of a five-plex) does not preserve the nonconforming use for the entire building (i.e. the other 4 units).
The plaintiffs’ argument fails to recognize the mandate of La. R.S. 33:4882,[2] which expressly provides that non-conforming use properties damaged by j^Hurricane Katrina cannot lose their use status for two years from the date of the storm. The statute provides, in pertinent part:
Notwithstanding any provision of law or municipal or parish ordinance or resolution to the contrary, the governing authority of any municipality or parish or agency of any such municipality or parish shall not allow and shall not cause any building or land to lose its nonconforming use status because, during all or part of the period of August 29, 2005 through August 28, 2007, as a result of damage caused by Hurricane Katrina or Hurricane Rita, it is temporarily vacant or operations normally carried on in such building or on such land have been temporarily discontinued.
Plaintiffs further argue that 33:4882 is preemptive and, following this court’s decision in Williams v. Parish of St. Bernard, 10-0397 (La.App. 4 Cir. 10/13/10), 49 So.3d 520, the owner had “at most” two years after Hurricane Katrina to obtain permits and repair the properties. Appellants’ interpretation of 33:4882 would lead to the conclusion that it is more restrictive than the pre-Katrina law. As such, reading *997 33:4882 in connection with BZA 13.3.2, defendants had two years to apply for a restoration permit and one year to complete repair. 312-314 South Jefferson Davis Parkway, 316-318 South Jefferson Davis Parkway and 320-322 South Jefferson Davis Parkway were all permitted and completed within the period following Hurricane Katrina. 209 South Jefferson Davis Parkway was permitted March 9, 2006 but not occupied until February 1, 2008. However, Williams recognized in dicta that “the City of New Orleans Board of Zoning Adjustment (“BZA”) is authorized to grant additional extensions to the restoration permit beyond the initial two year period.” Williams, supra, 10-0397, p. 9, 49 So.3d at 525.
Thus, all four properties were properly permitted and continue to enjoy their nonconforming use status. There is no genuine issue of material fact concerning |sthe property owners’ retention of their nonconforming use status, because they applied for and received their building permits within the period afforded them by La. R.S. 33:4882, along with any extensions of restoration permits granted under the authority vested in the City of New Orleans BZA. These assignments of error have no merit.
Plaintiffs next contend that the trial court erred in concluding that Entropy Enterprises, Ltd. (“Entropy”) operates its nineteen-room boarding house as a legally non-conforming use, and is exempt from the City Health and Sanitation Ordinances by operation of law. Plaintiffs argue that New Orleans has the power to regulate all rooming houses, and did not cede this authority to the State simply because the property has more than fifteen rooms. Citing the Louisiana Constitution of 1974, Article VI, Section 4, plaintiffs opine that the City’s power to regulate its own affairs is granted to it by through the issuance of a Home Rule Charter. This Charter grants the City the power to regulate all rooming houses located in the city, not just rooming houses that have less than 15 rooms. Entropy violates every city ordinance governing rooming houses; as such, it should be enjoined from operating, plaintiffs claim.
The City’s Municipal Code specifies that the Department of Environmental Health regulates the laws concerning rooming houses. Section 30-1321 of the Municipal Code states, in part, that a “[rjooming house ... means a building ... containing sleeping rooms where lodging or lodging and meals are provided for five or more unrelated persons but containing less than fifteen | ^sleeping rooms ...” Therefore, in accordance with this definition, the City’s Department of Environmental Health can only regulate rooming houses that have less than fifteen rooms. Entropy’s rooming house has nineteen rooms, and is not subject to these regulations.
Title 51, Part XV, Section 101 et seq. of the Louisiana Administrative Code sets forth the sanitary code regulations for all hotels, lodging houses, and boarding houses in the State of Louisiana. A lodging house, which is analogous to a rooming house, is defined as “a building where persons are supplied with, and charged for, sleeping accommodations but not meals.” Entropy’s rooming house has nineteen rooms. As such, it is governed by the regulations set forth in Title 51, Part XV, Section 101 of the Louisiana Administrative Code.
The trial court correctly ruled that because the rooming house has more than fifteen rooms, it is exempt from City Health and Sanitation Ordinances. This is true because city ordinances do not presently give city regulators the authority to apply city health and sanitation ordinances to a rooming house of more than fifteen *998 rooms. This assignment of error is without merit.

CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED

. ACCELA is a government enterprise management software providing a centralized approach to permitting and land management, planning, licensing, and enforcement activi *996 ties. It allows city employees to input data to a centralized database and access current information about a particular application or permit.

. La. R.S. 33:4882 became effective on June 29, 2006.