FRESENIUS MEDICAL CARE    \*    NO. 2024-CA-0804
LAKE FOREST, LLC

   \*

VERSUS            COURT OF APPEAL

   \*

NORMAN FOSTER, IN HIS          FOURTH CIRCUIT
CAPACITY AS DIRECTOR OF    \*
DEPARTMENT OF FINANCE;       STATE OF LOUISIANA
CITY OF NEW ORLEANS    \* \* \* \* \* \* \*
DEPARTMENT OF FINANCE,
BUREAU OF REVENUE

CONSOLIDATED WITH:           CONSOLIDATED WITH:

FRESENIUS MEDICAL CARE LAKE      NO. 2024-CA-0805
FOREST, LLC

VERSUS

NORMAN WHITE, IN HIS CAPACITY AS
DIRECTOR OF DEPARTMENT OF
FINANCE; CITY OF NEW ORLEANS
DEPARTMENT OF FINANCE, BUREAU
OF REVENUE

APPEAL FROM
BOARD OF TAX APPEALS
NO. L00402,
Judge Cade R. Cole
\* \* \* \* \* \*
**Judge Rachael D. Johnson**
\* \* \* \* \* \*

(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge
Rachael D. Johnson)

Jesse R. Adams, III
Andre B. Burvant
JONES WALKER WAECHTER POITEVENT CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue
51st Floor
New Orleans, LA 70170-5100


      COUNSEL FOR PLAINTIFF/APPELLEE

James M. Roquemore
Donesia D. Turner
Derek Michael Mercadal
City Attorney

CITY OF NEW ORLEANS LAW DEPARTMENT
1300 Perdido Street, Suite 5E03
New Orleans, LA 70112

Russell J. Stutes, Jr.
Russell J. Stutes, III
STUTES & LAVERGNE, LLC
600 Broad Street
Lake Charles, LA 70601

  COUNSEL FOR DEFENDANT/APPELLANT

                 **AFFIRMED**
               **JUNE 25, 2025**

*RDJ*
*TGC*
*DNA*

Appellant, Norman Foster, in his capacity as director of Department of Finance for the City of New Orleans (the "City"), appeals the Board of Tax Appeals (the "Board") June 5, 2024 judgment granting Appellee, Fresenius Medical Care Lake Forest, LLC's ("Fresenius"), motion for partial summary judgment. The City alleges that the Board erred in determining that Fresenius' purchase of prescription drugs from AmerisourceBergen Drug Corporation ("ABC") is exempt from Louisiana sales and use tax under the Medicare exclusion or exemption. After reviewing the record, we affirm the Board's ruling.

## FACTS AND PROCEDURAL HISTORY

From May 2017 through December 2021, Fresenius provided dialysis treatment and administered prescription drugs to patients with End-Stage Renal Disease ("ESRD") in Orleans Parish. According to Title 42 of the Code of Federal Regulations § 410.50, regular dialysis treatment for ESRD is covered by Medicare Part B[1] if it is furnished in approved ESRD facilities. The institutional dialysis services covered are (1) all services, items, supplies, and equipment necessary to

---

[1] Medicare Part B covers medically necessary services and preventive services. Medically necessary services are services or supplies that meet accepted standards of medical practice to diagnose or treat a medical condition. Preventative services are defined as health care to prevent illness or detect it at an early stage when treatment is likely to work best.

1

perform dialysis and drugs medically necessary for the treatment of an ESRD patient; (2) routine dialysis monitoring tests; (3) routine diagnostic tests; and (4) Epoetin and its administration. 42 C.F.R. § 410.50. It is undisputed that Fresenius' clinic is a Medicare-approved and certified ESRD facility. To maintain their certification, Fresenius must comply with the Conditions of Coverage ("CFC") issued by Centers for Medicare and Medicaid Services ("CMS"). CFC does not impose a requirement on the transactions between an approved ESRD facility (Fresenius) and prescription drug vendors. 42 C.F.R. § 494.1 through 494.180.

Every ESRD patient is eligible for benefits if (1) their kidneys no longer function; (2) they need regular dialysis treatment or have had a kidney transplant; and (3) the patient has worked the required amount of time to qualify under social security, is getting or is eligible for social security, or they're the spouse or dependent child of a person who meets either of the aforementioned requirements.[2] Each ESRD patient is assigned an attending physician and the physician authorizes the appropriate dosage of prescription drugs for the patient. Fresenius had two different methods of purchasing prescription drugs. One method was by directly ordering the prescription drugs from its vendors through Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America's ("FMC") procurement system. The second method was through centralized purchases of prescription drugs from ABC, through its distribution subsidiary ASD Healthcare, for clinic orders as needed. During the tax periods May 1, 2017, through December

_____

[2] Appellate Courts "can take judicial notice of government websites." *Pri-Tal v. Progressive Prop. Ins. Co.*, 2024-0531, p. 19 (La. App. 4 Cir. 5/14/25), ___ So.3d ___, ___, 2025 WL 1414743, at *1 (quoting *Filmore Parc Apartments II v. White*, 2024-0475, 0476, p. 15 (La. App. 4 Cir. 2/14/25), ___ So.3d ___, ___, n.1, 2025 WL 502045, at *9). Accordingly, we take judicial notice of Medicare's website which states the eligibility requirements for Medicare coverage of ESRD. *End-Stage Renal Disease (ESRD)*, https://www.medicare.gov/basics/end-stage-renal-disease (last visited June 23, 2025).

31, 2021, ASD Healthcare provided reports showing the clinic purchasing the drugs, the drugs that were purchased, and the total cost of the drugs purchased.

During its time of operation, Fresenius collected prescription drug purchase data and prescription drug administration data to prepare Drug Utilization Reports ("DUR's"). DUR's showed the procedures administered to patients based on insurance coverage type - Medicare, Medicaid, Commercial, or Other. Fresenius used the DUR's to calculate the monthly percentage of doses of each drug administered to Medicare patients over the total doses of each drug administered to all patients. Fresenius also prepared a Microsoft Access database report[3] to determine the number of doses of each drug purchased for each month and the price paid per dose for that month.

Fresenius hired Morty Steindler ("Mr. Steindler"), a consultant from State Tax Services, LLC, to accurately calculate the refund amount for each tax period. Mr. Steindler multiplied the cost of purchasing each prescription drug each month by the percentage of doses that the drug was administered to Medicare patients in the same month. He performed this calculation for both individual purchases and bulk purchases. Mr. Steindler then added the results for the individual and bulk purchases to find the aggregate proportion of the price paid for each drug, with their corresponding dosage, administered to Medicare patients. Mr. Steindler then multiplied the Medicare portion by the applicable sales tax rate to calculate the refund amount, minus the vendor's compensation, for each month in the May 2017 through December 2021 tax period.

---

[3] The report contained the following information: (1) drug sales provided by ASD; (2) data downloaded from FMC's financial accounting system for purchases of ASD prescription drugs; and (3) FMCs accounts payable data for prescription drugs acquired from non-ASD/ABC suppliers.

Fresenius filed its initial petition to the Board for refund of taxes paid on July 20, 2017. This petition was based on the May 2017 tax period. During the subsequent months, Fresenius filed petitions for refund of taxes until the December 2021 tax period. In the current case, 56 separate refund of taxes petitions were consolidated. On November 11, 2023, the City filed its motion for summary judgment, alleging that Fresenius failed to prove that La. R.S. 47:337.9(F) exempted the prescription drug purchases from sales tax. On April 9, 2024, Fresenius filed its motion for partial summary judgment, alleging that their prescription drug purchases were excluded and exempt under La. R.S. 47:301(10)(u) and 47:337.9(F). The Board denied the City's motion for summary judgment on May 2, 2024. On June 5, 2024, the Board granted Fresenius' motion for partial summary judgment, stating that Fresenius purchased prescription drugs pursuant to a Medicare Part B plan and was entitled to a refund under La. R.S. 47:337.9(F). The Board signed its final judgment on July 10, 2024, awarding Fresenius a refund of $89,668.63 for the tax periods May 1, 2017, through December 31, 2021. The City timely filed a notice of appeal.

On appeal, the City's sole assignment of error is whether the Board erred in finding that Fresenius' purchase of prescription drugs is excluded or exempt from sales tax under the provisions of Medicare.

## STANDARD OF REVIEW

When reviewing partial summary judgments, the appellate courts use a *de novo* standard of review. *Espinosa v. Accor N. Am., Inc.*, 14-0001, p. 5 (La. App. 4 Cir. 9/24/14), 148 So. 3d 244, 249 (citing *Kimpton Hotel & Rest. Grp., Inc. v. Liberty Mut. Fire Ins. Co.*, 07-1118, 07-1209, 07-1310, p. 3 (La. App. 4 Cir. 12/19/07), 974 So. 2d 72, 75). The appellate courts use the same criteria as the

4

district courts when considering whether summary judgment is appropriate. *Id.* (citation omitted). "When the facts are not in dispute, summary judgment is appropriate as the appellate court need only 'look solely to the legal question presented by the motion for summary judgment.'" *Cooper v. Eng. Turn Prop. Owners Ass'n, Inc.*, 22-0748, p. 7 (La. App. 4 Cir. 4/25/23), 360 So. 3d 633, 638, *writ denied*, 23-00743 (La. 9/26/23), 370 So. 3d 478 (citing *Power Mktg. Direct, Inc. v. Foster*, 05-2023, p. 9 (La. 9/6/06), 938 So. 2d 662, 669).

## DISCUSSION

The City argues that Fresenius' purchase of prescription drugs from ABC does not qualify for tax exemption under Louisiana Revised Statute 47:337.9(F). Louisiana Revised Statute 47:337.9(F) states the following:

> Notwithstanding any provision of law to the contrary, prescription drugs purchased through or pursuant to a Medicare Part B and D plan shall be exempt from the sales and use taxes imposed by any local governmental subdivision, school board, or other political subdivision whose boundaries are not coterminous with the state.

The City contends that purchases from ABC should be considered a "taxable moment," in which the transaction must stand on its own. The taxable moment occurred when Fresenius purchased prescription drugs from ABC in bulk. During this "taxable moment", Fresenius did not specify whether the drugs were for patients under Medicare, Medicaid, commercial insurance, etc. The City relied on *Crowe v. Bio-Med. Application of Louisiana, LLC,* where the Court determined that La. R.S. 47:337.9(F) did not apply to the taxpayer's prescription drug purchases because the medication purchased was provided to both Medicare and Non-Medicare patients. *Crowe v. Bio-Med. Application of Louisiana, LLC*, 14-0917, pp. 25-26 (La. App. 1 Cir. 6/3/16), 208 So. 3d 473, 490-91, *adhered to on*

5

*reh'g,* 14-0917 (La. App. 1 Cir. 2/17/11), 241 So. 3d 328. After reviewing the record, we find that this assignment of error is without merit.

Fresenius is distinguishable from the taxpayer in *Crowe*. Fresenius provided evidence tracing its prescription drug purchases to Medicare Part B patients. Fresenius provided reports of the type of medication administered to each patient; the exact dosage with the appropriate unit of measurement administered to each patient; which day and month the medication was administered; identified whether the patient was under Medicare, Medicaid, commercial insurance, etc.; the unit price and date for each medication purchased; and the total cost of the medication administered to Medicare patients. The "taxable moment" doctrine would not apply to Fresenius because the detail provided clearly showed which patient was receiving which medicine and the corresponding dosage.

This is in stark contrast with *Crowe*, where the taxpayer purchased the prescription drugs in bulk but did not calculate the medicine and dosage given to the patients. *Crowe v. Bio-Med. Application of Louisiana, LLC*, 14-0917, p. 2 (La. App. 1 Cir. 2/17/11), 241 So. 3d 328, 329, (Chutz, J. concurring). The taxpayer in *Crowe* calculated the refund "by dividing the number of dialysis treatments rendered to Medicare patients by the total number of dialysis treatments rendered at the kidney dialysis facility… ." *Id*. at pp. 1-2. Judge Chutz, concurring in the *Crowe* rehearing opinion, stated that the taxpayer's evidence was insufficient for its refund claim because the patients were not being "administered the same medicines in the same doses." *Id*. at p. 2. The Court was unable to determine the exact amount of prescription drugs provided to Medicare patients and determined that the taxpayer provided insufficient evidence to support their refund claim under La. R.S. 47:337.9(F). Fresenius provided extensive detail and was able to calculate

6

the exact refund amount for prescription drug purchases to Medicare patients and showed that their purchases were pursuant to the Medicare Part B plan. As such, Fresenius' purchase of prescription drugs qualifies under La. R.S. 47:337.9(F).

## DECREE

For the foregoing reasons, we affirm the Board's June 5, 2024 judgment granting Fresenius' motion for partial summary judgment and awarding a refund of $89,668.63 for the tax periods May 1, 2017, through December 31, 2021.

**AFFIRMED**