**CORRECTED COPY**

| | | |
|---|---|---|
| **BRITTANY AND JAMAR WAITERS** | * | **NO. 2020-CA-0324** |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **RENEE E. DEVILLE** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

**CONSOLIDATED WITH:**                    **CONSOLIDATED WITH:**

**BRITTANY AND JAMAR WAITERS**                        **NO. 2020-C-0556**

**VERSUS**

**RENEE E. DEVILLE**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-13046, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Edwin A. Lombard, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

Christopher J. Davidson
DAVIDSON & DAVIDSON, APLC
2901 Independence Street
Suite 201
Metairie, LA 70006

John A. E. Davidson
DAVIDSON & DAVIDSON, APLC
2901 Independence Street
Suite 201
Metairie, LA 70006

        COUNSEL FOR PLAINTIFF/APPELLEE

Kyle Salvador Sclafani
THE LAW OFFICE OF KYLE S. SCLAFANI
4130 Canal Street, Suite A
New Orleans, LA 70119

Jack Edward Morris
JACK E. MORRIS, ATTORNEY AT LAW, LLC
4051 Veterans Memorial Boulevard
Suite 208
Metairie, LA 70002


COUNSEL FOR DEFENDANT/APPELLANT




**APPEAL CONVERTED TO A WRIT;
WRIT GRANTED; RELIEF DENIED IN PART;
JUDGMENT STAYED IN PART;
JUDGMENT VACATED IN PART AND REMANDED
DECEMBER 30, 2020**

*RBW*

*EAL*

*PAB*

This consolidated matter stems from a tax sale of property located at 4609-11 Freret Street in New Orleans, LA ("the Property"). Defendant-Plaintiff-in-Reconvention-Appellant, Renee deVille ("Ms. deVille") sought an appeal from a judgment granting a preliminary injunction in favor of Plaintiffs-Defendants-in-Reconvention-Appellees, Brittany and Jamar Waiters ("the Waiters). While the appeal was pending, Ms. deVille sought a supervisory writ regarding a motion for partial summary judgment granted in favor of the Waiters.

For the reasons that follow, the appeal of the Injunction is converted to an application for supervisory writs and consolidated with the writ regarding the motion for partial summary judgment. We grant the writ application, deny relief in part, stay the judgment of the trial court in part, vacate the judgment of the trial court in part, and remand this matter for further proceedings consistent with this opinion.

1

# JURISDICTION

Prior to considering an appeal, "appellate courts have a duty to determine whether subject matter jurisdiction exists to entertain an appeal, even if the parties fail to raise the issue." *Waiters v. deVille,* 2019-1048, p. 1 (La. App. 4 Cir. 04/22/20), 299 So. 3d 728, 731 [hereinafter *"Waiters I"*], (citing *Moon v. City of New Orleans*, 15-1092, 15-1093, p. 5 (La. App. 4 Cir. 03/16/16), 190 So. 3d 422, 425). In addition to the writ application filed by Ms. deVille, which challenges the trial court's granting of a motion for partial summary judgment in favor of the Plaintiffs-Appellees, Brittany and Jamar Waiters ("the Waiters"), she also appeals the trial court's granting of a preliminary injunction ("the Injunction"). "A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief." *Farmer's Seafood Co. v. State ex rel. Dep't of Pub. Safety*, 2010-1746, p. 4 (La. App. 1 Cir. 2/14/11), 56 So. 3d 1263, 1266. "The proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ." *Delahoussaye v. Tulane Univ. Hosp. & Clinic*, 2012-0906, p. 4 (La. App. 4 Cir. 2/20/13), 155 So. 3d 560, 562 (citations omitted).

Notwithstanding, this Court has converted a non-appealable judgment to an application for supervisory writs when the following two conditions have been met: "(1) [t]he motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under La. Unif. R. Ct. App. 4-3; and (2) [w]hen the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation." *Mandina, Inc. v. O'Brien*, 13-0085, p. 8 (La. App. 4 Cir.

2

7/31/13), 156 So. 3d 99, 104; *see also Stelluto v. Stelluto*, 05-0074, p. 7 (La. 6/29/05), 914 So. 2d 34, 39 (observing that "the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts").

In the case *sub judice*, the Injunction—one of the matters under consideration by this Court—is a preliminary issue which did not terminate the litigation between the parties because Ms. deVille filed a reconventional demand for reimbursement claims owed to her by the Waiters, which has yet to be decided by the trial court. Additionally, the motion for appeal on the Injunction was filed within thirty (30) days from the date of the notice of judgment,[1] and the Injunction is of such a nature (impacting real property and commerce) that an immediate decision is necessary to ensure fundamental fairness and judicial efficiency, which warrant our exercising the discretion to do so.

Based on the foregoing, we find that the conditions to convert the appeal to a writ application have been met in this matter. Accordingly, we convert the appeal to an application for supervisory writs.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to the instant consolidated action, the parties were before a different panel of this Court for consideration of an appeal that was converted to a writ application pertaining to the trial court's granting of a peremptory exception of no cause of action.[2] In *Waiters*, 299 So. 3d 728 (hereinafter referred to as *"Waiters I")*, this Court reversed the trial court's sustaining of the exception and set forth the pertinent factual and procedural history:

---

[1] The notice of judgment was issued on November 27, 2019, and the motion for appeal was filed six days later, on December 3, 2019.
[2] *Waiters v. deVille*, 2019-1048 (La. App. 4 Cir. 04/22/2020), 299 So. 3d 728.

3

December 3, 2009--Ms. deVille successfully purchased a 1% ownership interest in the Property[3] at a tax sale for unpaid *ad valorem* taxes; at the time of the tax sale, the titled owners of the Property were Ruth Thompson and her daughter, Beulah Mae Jefferson;

February 12, 2010--Ms. deVille's Tax Sale Deed was recorded;

September 28, 2011--As a tax sale purchaser of blighted property, Ms. deVille filed a verified petition for a writ of possession pursuant to La. R.S. 47:2158 to obtain lawful possession of the Property and to begin repairs; on the same date, the Orleans Parish Civil District Court ("CDC") issued a writ of possession (the "Writ of Possession"), commanding the Orleans Parish Sheriff (the "Sheriff") to deliver possession of the Property to Ms. deVille;

October 19, 2011--The Sheriff delivered possession of the Property to Ms. deVille;

December 29, 2011--Ms. deVille recorded the first of four Statements of Lien or Privilege against the Property in the sum of $10,200.00; this first lien was for the expenses incurred in securing the Property, removing exterior debris, and addressing code violations;

February 3, 2012--Seeking to obtain ownership of the Property pursuant to La. R.S. 9:5633 (the blight acquisitive prescription statute), Ms. deVille recorded an Affidavit of Intent to Possess ("Affidavit of Intent"); Ms. deVille avers that she thereafter followed all but one of the twelve steps of the process for perfecting ownership set forth in La. R.S. 9:5633;

November 5, 2012--Ms. deVille applied for and obtained permits to renovate the Property from the City of New Orleans (the "City").

August 5, 2013--The City issued a certificate of occupancy;

October 18, 2018--Roosevelt Thompson--purporting to be Ruth Thompson's grandson and Beulah Mae Jefferson's son--filed a Petition to Administer the

---

[3] 4609-11 Freret Street, New Orleans, Louisiana is the property that is the subject of the pending action ("the Property").

4

Successions of Ruth Thompson and Beulah Mae Jefferson (the "Successions"); Mr. Thompson also executed and filed, pursuant to La. R.S. 9:5633(J), an affidavit of nullification (the "Affidavit of Nullification"); and

November 13, 2018—the Successions sold the Property, with court approval, to the Waiters in a cash sale, which was recorded and which Ms. deVille avers "caused a disturbance-in-law."

In December 2018, the Waiters commenced this suit, captioned as a "Petition to Annul Tax Title, Declaratory Judgment, and Petitory Action." In their petition, the Waiters averred that they were the "sole owners" of the Property, acquiring title by a cash sale from the Successions. The Waiters further averred that the defendant, Ms. deVille, was the holder of a Tax Sale Deed purportedly conveying a 1% ownership interest in the Property for unpaid *ad valorem* taxes. According to the Waiters, the tax sale was an absolute nullity given the notice and advertisement were constitutionally infirm.

In their petition, the Waiters additionally averred that Ms. deVille had made the following other filings into the record regarding the Property: (i) the Affidavit of Intent, pursuant to La. R.S. 9:5633; (ii) the Writ of Possession, pursuant to La. R.S. 47:9158; and (iii) a statement of lien and privilege.[14] The Waiters sought to annul those other filings. Lastly, the Waiters sought recognition of the effect of the Affidavit of Nullification.

Ms. deVille answered the petition and filed a reconventional demand. The thrust of her reconventional demand was that she complied with the spirit as well as the requirements of La. R.S. 9:5633 and, thus, acquired ownership of the Property under that acquisitive prescription statutory scheme. Alternatively, she sought reimbursement for the amounts that she paid in association with the Property. The relief she requested in her reconventional demand consisted of the following: (i) confirmation of her compliance with La. R.S. 9:5633; (ii) nullification of the Affidavit of Nullification; (iii) reimbursement of all amounts she paid in association with the Property pursuant to La. R.S. 9:5633(E); and (iv) damages (unjust enrichment).

The Waiters, as defendants-in-reconvention, answered and filed a peremptory exception of no cause of action. The Waiters emphasized that Ms. deVille, in her answer

5

and reconventional demand, acknowledged that—due to her failure to comply with at least one of the twelve statutory steps—she has no claim of ownership to the Property under La. R.S. 9:5633. The Waiters contented [sic] that Ms. deVille could not prevail on any claim for ownership of the Property. They emphasized that Ms. deVille purported to assert a variety of claims sounding in equity, which are specifically excluded by R.S 9:5633. They further emphasized that, despite that Ms. deVille holds a 1% Tax Sale Deed (certificate), she has failed to file any proceeding to quiet her tax title.

*Waiters I, 2019-1048, pp. 3-8, 299* So.3d at 732–735.

On September 25, 2019, while *Waiters I* was pending, the Waiters filed "Plaintiff's first Supplemental and Amended Petition for Damages and for Preliminary and Permanent Injunction." The Waiters sought the prohibition of Ms. deVille and/or her agents from possessing the Property and sought to have Ms. deVille removed from the property. On November 7, 2019, Ms. deVille filed a "Memorandum in Opposition to Preliminary and Permanent Injunction."[4]

On November 14, 2019, a hearing was held, and the trial court granted the Injunction. On December 3, 2019, Ms. deVille filed "Motion and Order of Appeal and Request for Expedited Consideration" that the trial court granted. Per the order granting the appeal, the Injunction was stayed pending the outcome of the current appeal/writ application.

On June 1, 2020, while this appeal was pending, the Waiters served Ms. deVille with Interrogatories and Requests for Documents. On July 29 2020, the Waiters filed a "Motion for Partial Summary Judgment With Request for Order

---

[4] Ms. deVille asserted in the memorandum that:
- A mandatory injunction cannot be granted absent a trial on the merits,
- The pending appeal divested the trial court of jurisdiction over the matters subject to the request for injunctive relief, and
- Granting injunctive relief would destroy rather than preserve the status quo because Defendant-Appellant and/or her agents currently had possession of the property.

6

Requiring Compliance With R.S. 13:4231." The Waiters sought to annul the tax sale deed and be recognized as the sole owners of the Property.

Ms. deVille contends that attempts to request compliance with the stay order were refused by the Waiters. In response, she filed a "Motion For Contempt, to Quash Discovery, and for Attorney's Fees" against the Waiters.

On September 11, 2020, the trial court held a hearing on the motion for partial summary judgment and the contempt. On September 22, 2020, the trial court signed a written judgment denying Ms. deVille's motion for contempt and granting the Waiters' motion for partial summary judgment on the issue of tax sale nullity.

It is from this ruling, as well as the granting of the Injunction that Ms. deVille now appeals.

## DISCUSSION

### *Assignments of Error*

In this consolidated action, Ms. deVille asserts the following assignments of error:

1) Whether the trial court erred in exercising jurisdiction over matters reviewable under a pending appeal?

2) Whether the trial court erred in issuing a preliminary injunction without requiring security?

3) Whether the trial court erred in granting a permanent mandatory injunction through a hearing instead of a trial on the merits?

4) Whether the trial court erred in issuing an injunction divesting Defendant-Appellant of possession of the Property without prior reimbursement for expenses and improvements associated with the Property?

5) Whether the trial court erred in issuing an injunction without proof Plaintiffs-Appellees would suffer irreparable injury?

7

6) Whether the trial court erred in issuing a preliminary injunction without proof Plaintiffs-Appellees was likely to prevail on the merits?

7) Whether the trial court erred in granting the motion for partial summary judgment?

8) Whether the trial court erred in declaring that the Tax Sale Deed is null and void without first fixing the redemptive costs?

We will examine each of Ms. deVille's assignments of error in turn, but first we will discuss the standard of review applicable to this matter.

### *Standard of Review*

*Preliminary Injunction*

Generally, the standard of review for a preliminary injunction is whether the trial court abused its discretion. *Meredith v. I Am Music, LLC*, 2018-0659, p. 4 (La. App. 4 Cir. 2/13/19), 265 So. 3d 1143, 1145 (citing *Rand v. City of New Orleans*, 12-0348, p. 3 (La. App. 4 Cir. 12/13/12), 125 So. 3d 476, 479). This Court, in *Yokum v. Pat O'Brien's Bar, Inc.*, 12-0217, p. 6-7 (La. App. 4 Cir. 8/15/12), 99 So. 3d 74, 80, enunciated the standard to use in determining if a preliminary injunction was properly granted or denied as follows:

> 'A trial court has broad discretion in the granting or denial of a preliminary injunction, and will not be disturbed on review absent clear abuse of that discretion.' *Cajun Elec. Power Co-op., Inc. v. Triton Coal Co.,* [19]91-1816, 590 So. 2d 813, 816 (La. App. 4 Cir. 1991); *Smith v. West Virginia Oil & Gas Co.,* 373 So. 2d 488, 493 (La. 1979). That broad standard is, of course, based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion. *See South East Auto Dealers Rental Ass'n, Inc. v. EZ Rent To Own, Inc.,* [20]07-0599, pp. 4-5 (La. App. 4 Cir. 02/27/08), 980 So. 2d 89, 93.

8

*Partial Summary Judgment*

The standard of review for the granting of a partial summary judgment is *de novo. Espinosa v. Accor N. Am., Inc.*, 2014-0001, p. 5 (La. App. 4 Cir. 9/24/14), 148 So.3d 244, 249; *Kimpton Hotel & Rest. Grp., Inc. v. Liberty Mut. Fire Ins. Co.*, 2007-1209 p. 3 (La. App. 4 Cir. 12/19/07), 974 So. 2d 72, 75. Summary judgments are favored by the courts as a procedure to secure a "just, speedy, and inexpensive determination." La. C.C.P. art. 966A(2); *Espinosa*, 148 So. 3d at 249; *Kimpton*, 974 So. 2d at 75. Summary judgment will be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The mover bears the burden of proof. La. C.C.P. art. 966(D)(1). "[I]f the mover will not bear the burden of proof at trial on the issue that is before the court ... the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense." *Id*. In that case, the movant must "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Kimpton*, 974 So. 2d at 75 (citation omitted).

Now we turn to Ms. deVille's assignments of error.

## Analysis

**I.     Whether the trial court erred in exercising jurisdiction over matters reviewable under a pending appeal?**

In her first assignment of error, Ms. deVille raises a procedural issue. We must dispose of this procedural issue, prior to analyzing her substantive assignments of error.

Ms. deVille argues that because she had lodged an "appeal" based on the trial court's sustaining an exception of no cause of action, and it was pending before this Court during the time when the trial court held the hearing on the preliminary injunction, the trial court did not have jurisdiction to hear the preliminary injunction. In support of her assertion, Ms. deVille cites La. C.C.P. art. 2088(A), which provides, in pertinent part:

> A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal.  Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal….

Article 2088 "contains a list of specific actions over which a district court retains jurisdiction in a case after the filing of an order of appeal." *Doe v. Louisiana Health Service & Indemnity Company*, 2016-0552, p. 4 (La. App. 4 Cir. 03/15/17), 214 So. 3d 99, 102.  "The jurisprudence has construed the catch-all phrase in Article 2088--all matters 'not reviewable under the appeal'--to mean that the trial court retains jurisdiction over all issues that are 'unaffected by the appeal,' even issues not specifically enumerated in La. C.C.P. art. 2088." *Bates v. City of*

*New Orleans,* 2013-1153, 2013-1587, p. 20 (La. App. 4 Cir. 03/26/14), 137 So. 3d 774, 788 (citing *French Market Vendors Ass'n, Inc. v. French Market Corp.,* 12-0964, p. 15 (La. App. 4 Cir. 02/13/13), --So.3d---, ---, 2013 WL 543627 (internal citations omitted).

As this Court recognized in *Waiters I*, Ms. deVille employed the wrong procedural device when she filed an appeal from the trial court's sustaining the peremptory exception of no cause of action. Because the sustaining of the peremptory exception of no cause of action was interlocutory, the proper procedural vehicle that should have been employed was a supervisory writ. In fact, prior to issuing its opinion in *Waiters I*, this Court, utilizing its appellate discretion, converted the appeal to a supervisory writ application.

Accordingly, "[t]he filing of, or the granting of, a writ application does not stay further proceedings unless the trial court or appellate court expressly orders otherwise." La. Unif. R. Ct. App. 4-4. When an order staying proceedings has not been issued, the trial court may proceed. *See Bankston v. Alexandria Neurosurgical Clinic*, 94-693, p. 3 (La. App. 3 Cir. 12/7/94), 659 So. 2d 507, 510.[5]

Based on the aforementioned, we find that La. C.C.P. art. 2088 did not apply to the proceedings held before the trial court. the trial court was within its right to hold a hearing on the Injunction while this Court considered the supervisory writ application on the peremptory exception of no cause of action. Accordingly, we find that the trial court was not divested of its jurisdiction to hear the Injunction while the supervisory writ was pending. Therefore, Ms. deVille's first assignment of error is without merit.

---

[5] In the instant matter, the trial court issued a stay, but not during the pendency of the writ application on the peremptory exception of no cause of action.

**II.    Whether the trial court erred in granting the motion for partial summary judgment and erred in declaring the tax sale deed null and void without first fixing the redemptive costs?**

We next turn to Ms. deVille's assignment of errors numbers seven (7) and eight (8).  Because they are interrelated, we will discuss them together.

On July 29, 2020, the Waiters filed a motion for partial summary judgment regarding issues of ownership and tax sale nullity related to the Property.  In their motion, the Waiters sought to annul the tax sale deed and recognize themselves as the sole owners of the Property.  They attached a certified copy of the tax sale deed, a copy of the cash sale from the successions to the Waiters, an amended judgment of possession in favor of Beulah Jefferson, and a sale of property to Vernon Thompson.[6]

In response to the motion for partial summary judgment, Ms. deVille filed a motion for contempt against the Waiters.  She also filed an opposition to the motion for partial summary judgment and  attached a copy of a stay order, the transcript of  the hearing on the exception of no cause of action, the petition for authority to advertise and sell the Property to the Waiters in the succession proceedings, with orders authorizing the advertisement and sale, transcript excerpts of  the hearing regarding the petition for a preliminary mandatory injunction, and the affidavit of death, domicile and heirship executed by Brittany Waiters in the succession proceedings.

---

[6] At the time of the hearing in the trial court, succession proceedings were pending in another division of the Orleans Parish Civil District Court, captioned "Successions of Ruth Thompson and Beulah Mae Jefferson, 2018-10490, Division N-8."  Ms. deVille intervened in that action asserting claims against the successions, the administrator, and Jamar Waiters to nullify the private sale of the Property to the Waiters.  Ms. deVille also filed a motion to consolidate and transfer the instant case with the successions case.

On September 11, 2020, a hearing on the motion for contempt and motion for partial summary judgment was held. The trial court rendered an oral ruling, but on September 22, 2020, issued a written judgment denying Ms. deVille's motion for contempt against the Waiters and granting the Waiters' motion for partial summary judgment on the tax sale nullity issue only. The judgment that is at issue herein states the following, in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED there be judgment in favor of Brittany and Jamar Waiters and against Renee deVille in accordance with La. Rev. Stat. 47:2291[7] [and] the tax sale conducted

---

[7] La. R.S. 47:2291 provides:

    A. A nullity action shall be an ordinary proceeding governed by the Louisiana Code of Civil Procedure. Upon conclusion of the action for nullity, the court shall either:

    (1) Issue a preliminary order that the tax sale, an acquisition of full ownership by a political subdivision, or a sale or donation of adjudicated property, as applicable, will be declared a nullity.

    (2) Render judgment dismissing the action with prejudice which shall be a final judgment for purposes of appeal.

    B.

    (1) The tax sale purchaser, the political subdivision, or the purchaser or done from a political subdivision shall be presumed to be a good faith possessor of the property.

    (2) Costs pursuant to Article VII, Section 25 of the Louisiana Constitution and R.S. 47:2290 shall include costs of sending notice, costs of publication, and costs of determining tax sale parties. Costs shall also include amounts set forth in Civil Code Articles 496 and 497, if applicable.

    (3) Within fifteen days after the rendering of the order under Paragraph(A)(1) of this Section, the party claiming costs shall submit proof of costs. Proof of costs may be made by affidavit or other competent evidence and may be contested by the party claiming the nullity. A contest of costs shall may be contested by the party claiming the nullity. A contest of costs shall be filed within fifteen days after the filing of the proof of costs, and the contest shall be heard within forty-five days after the filing of the proof of costs.

    (4) Within sixty days after the issuance of the order pursuant to Paragraph(A)(1) of this Section, the court shall render a judgment of nullity, and the judgment shall fix the costs allowed. This judgment shall be a final judgment subject to appeal.

    C. After a judgment under Section B of this Section has been rendered, the governmental liens, other than statutory impositions paid if the nullity has been rendered on the basis of prior payment, and costs, shall be paid within one year from the date of the judgment. This one-year period shall be

13

on December 2, 2009 and December 3, 2009[,] memorialized by a tax sale deed from Thompson Ruth Et Al to Renee deVille for unpaid 2007 and 2008 ad valorem taxes recorded February 12, 2010 and identified as NA#:10-06769 Inst.#: 450968 which bears on the following property, is null and void:

…

Improvements thereon bear Municipal No. 4609-11 Freret Street, New Orleans, La[.] 70115.

Ms. deVille asserts that the trial court erred in granting the Waiters' motion for partial summary judgment when it declared the tax sale deed null and void. Ms. deVille contends that the Waiters failed to show that there was no genuine issue of material fact regarding the issue of tax sale nullity and further alleges that the Waiters filed no supporting documents proving that the tax sale deed was null under any of the exclusive causes for nullity under the Louisiana Constitution and tax sale laws.[8]

*Issues of Material Fact*

In *Patton v. Unopened Succession of Dearie,* 2017-0151, p. 12 (La. App. 4 Cir. 10/11/17), ---So. 3d---, ---, 2017 WL 4534401, at *6 (citing *Mooring Financial Plan 401(K) Profit Sharing Plan v. Ninth Ward Housing Corp.*, 2009-

---

suspended while an appeal is pending. If the payment is not made within the period allowed, the judgment of nullity shall be vacated and the case dismissed with prejudice at the request of the person against whom the judgment of nullity was rendered.

D. After payment has been made, the party in whose favor judgment has been rendered may apply for an ex parte order stating that the required payments have been made. The application shall be verified and shall state, or an affidavit accompanying the application shall state, the amount and method of payment, that the payment was made to the party against whom the judgment has been rendered, and that a request for dismissal under Subsection C of this Section has not been filed.

[8] Out of an abundance of caution, Ms. deVille asserts that in compliance with the procedural requirements and time limitations set forth in La. R.S. 47:2291, she filed the proof of costs, but submits that if this Court grants her writ application she would terminate the contest of costs and a hearing would not be necessary.

0327, p. 3 (La. App. 4 Cir. 09/16/09), 18 So. 3d 797, 798), this Court recognized that "[i]t is well-settled that a certified copy of a tax deed amounts to *prima facie* evidence of the tax sale's validity." *See also* La. R.S. 47:2155(B)("A certified copy of the tax sale certificate is *prima facie* evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale."). Ms. deVille contends that the tax sale deed is *prima facie* evidence of the validity of the tax sale in this case.

Additionally, she argues that the documents she submitted with her opposition of the Waiters' motion for partial summary judgment established genuine issues of material fact regarding the Waiters' alleged ownership of the Property and the Waiters' standing to file suit for tax sale nullity. Ms. deVille relies, in part, on *Stow-Serge v. Side by Side Redevelopment, Inc.,* 2020-0015, p. 5 (La. App. 4 Cir. 06/10/20), 302 So. 3d 71, 76, *writ denied*, 2020-00870 (La. 10/14/20), 302 So. 3d 1120, wherein this Court noted that tax sales may no longer be attacked as absolute nullities.

*Stow-Serge* involved a dispute between two tax sale purchasers over ownership of immovable property located at 2320 Delachaise Street in New Orleans, Louisiana. Side by Side Redevelopment, Inc. ("SBS"), the possessor of the Property, appealed the trial court's partial summary judgment on the issue of ownership, asserting that the plaintiff, Christopher Stow-Serge, the most recent tax title purchaser, was the owner of the Property. This Court converted the appeal to an application for supervisory writs and denied the writ application. *Stow-Serge*, 2020-0015, p. 1, 302 So. 3d at 73.[9]

---

[9] This Court recognized that although the judgment determined an ownership interest, the judgment did not terminate the litigation between the parties, because a reconventional demand was filed by the defendants, SBS and 2320 Delachaise, Inc., for reimbursement claims between the parties.

15

The tax sale at issue in *Stow-Serge* occurred on September 9, 2014, wherein Stow-Serge acquired 100% interest in the Property by tax sale title. The tax sale certificate was executed and later recorded in the conveyance records on October 27, 2014. *Stow-Serge*, 2020-0015, p. 3, 302 So. 3d at 74. On February 20, 2018, after the expiration of the three-year redemptive period, Stow-Serge filed a Petition to Quiet Title and for Declaratory Judgment, naming as Defendants: 1) SBS; 2) 2320 Delachaise, Inc.; and 3) Maritime Expert Services, LLC. SBS and Maritime Expert Services were former tax sale purchasers.

SBS and 2320 Delachaise, Inc., filed exceptions and an answer to the lawsuit, as well as a reconventional and third party demand against Stow-Serge and Maritime Expert Services to annul their tax sales and for reimbursement expenses.[10] Stow-Serge filed a motion for partial summary judgment seeking to quiet title, to be declared 100% owner of the Property, and to cancel the *lis pendens* filed by SBS. *Stow-Serge*, 2020-0015, p. 4, 302 So. 3d at 75. After a hearing, the trial court granted partial summary judgment in favor of Stow-Serge as to ownership and cancelled the *lis pendens* filed by SBS.

On review, this Court recognized "[t]he fundamental issue in this case is whether the tax sale to [Stow-Serge] was valid." *Id*. at p. 4. At the time of the 2014 tax sale, La. R.S. 47:2121(C)(1), provided:

> A tax sale confers on the tax sale purchaser ... only tax sale title. If the tax sale title is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interest, claims, or encumbrances held by all duly notified persons....

---

[10] SBS and 2320 Delachaise also filed a third party demand against the City of New Orleans for damages, as well as reimbursement expenses. Maritime Expert Services executed a quit claim deed in favor of Stow-Serge and was dismissed from Stow-Serge's lawsuit with prejudice.

16

*Stow-Serge*, 2020-0015, p. 4, 302 So. 3d at 76.

"Thus, in adherence with federal due process requirements, the statutory language creates a two-step process in order for title of the property to transfer ownership: 1) expiration of the redemptive period; and 2) notification of all required persons." *Id*. This Court also noted "[i]t is well-recognized that 'the term 'tax sale' actually denotes that it is the tax lien that is purchased in the form of [a] tax sale title, albeit with future rights of ownership after due notice to all 'tax sale parties' and the expiration of the redemptive period, as well as the filing of a suit to quiet title.'" *Id*. (quoting *Cent. Properties v. Fairway Gardenhomes, LLC*, 2016-1855, p. 8 (La. 6/27/17), 225 So. 3d 447, 449).

In his motion for partial summary judgment, Stow-Serge attached a certified copy of the tax certificate, which this Court again recognized "is *prima facie* evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale." *Stow-Serge*, 2020-0015, p. 5, 302 So. 3d at 76 (citing La. R.S. 47:2155(B)). Because the certified tax certificate was *prima facie* evidence of the validity of the tax sale, "the burden shifted to SBS to establish the tax sale was not valid." *Id*. This Court further recognized that "[t]ax sales may no longer be attacked as absolute nullities." *Id*. "Instead, there are three statutorily enumerated challenges, which if proven, will nullify a tax sale certificate – a payment nullity, redemption nullity, or a nullity under La. R.S. 47:2162 [purchase by tax collectors and assessors at tax sale forbidden]." *Id*. (citing La. R.S. 47:2286; *Cent. Properties*, 2016-1855, p. 12, 225 So. 3d at 449; and *Alpha Capital US Bank v. White*, 18-827, p. 7 (La. App. 1 Cir. 12/21/18), 268 So. 3d 1124, 1129 (citations

17

omitted)).[11] Relative nullities are capable of being cured. *Stow-Serge*, 2020-0015, p. 5, 302 So. 3d at 76.

The only applicable nullity challenge in *Stow-Serge* was a redemption nullity, which "is 'the right of a person to annul a tax sale in accordance with La. R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period.'" *Id.* (quoting La. R.S. 47:2122(10)). This Court also cited La. R.S. 47:2122(4), which provides, in pertinent part:

> "Duly notified" means, with respect to a particular person, that an effort meeting the requirements of due process of law has been made to identify; and to provide that person with a notice that meets the requirements of La. R.S. 47:2156, 2157, 2206, 2236, or 2275..., regardless of any of the following:
>
> a) [w]hether the effort resulted in actual notice to the person,
> b) [w]hether the one who made the effort was a public official or a private party,
> c) [w]hen, after the tax sale, the effort was made.

*Stow-Serge*, 2020-0015, p. 5, 302 So. 3d at 76 (quoting La. R.S. 47:2122(4)).

This Court turned to the issue of whether notice was provided in accordance with La. R.S. 47:2156,[12] which provides the procedure for post-sale notice of the

---

[11] La. R.S. 47:2286 provides:

> No tax sale shall be set aside except for a payment nullity, redemption nullity, or a nullity under R.S. 47:2162, all of which are relative nullities. The action shall be brought in the district court of the parish in which the property is located. In addition, the action may be brought as a reconventional demand or an intervention in an action to quiet title under R.S. 47:2266 or as an intervention in a monition proceeding under R.S. 47:2271 through 2280.

[12] At the time of the tax sale, Subsection B of La. R.S. 47:2156 provided:

> B. (1) For each property for which tax sale title was sold at tax sale to a tax sale purchaser, each collector shall within thirty days of the filing of the tax sale certificate, or as soon as practical thereafter, provide written notice to the following persons that tax sale title to the property has been sold at tax sale. The notice shall be sent by postage prepaid United States mail to each tax notice party and

18

right to redeem.[13]   The *Stow-Serge* Court ultimately held that because the redemptive period expired and SBS was duly notified of the tax sale and the expiration of the redemptive period, there was no genuine issue of material fact as to the validity of the tax sale, noting that the notice included the property listed, the notice of the sale, the notice of the right to redeem, information on how to redeem,

---

each tax sale party whose interest would be shown on a thirty-year mortgage certificate in the name of the tax debtor and whose interest was filed prior to the filing of the tax sale certificate.
(2) The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property shall be redeemed and shall be sufficient if in the following form[.]

[13] Stow-Serge purchased the Property at a tax sale recorded on October 27, 2014. Bryan Barrios, Chief Executive Officer of Archon Information Systems, L.L.C., swore in an affidavit that Archon conducted the sale at issue and was responsible to notify the interested parties. Archon identified SBS as an interested party and attempted to make calls, as well as provided multiple notices by U.S. Mail. On behalf of the City of New Orleans, tax collection division, Archon mailed a post-sale redemption notice to SBS on December 5, 2014, more than six months before the expiration of the redemptive period on October 27, 2017. *Stow-Serge*, 2020-0015, p. 6, 302 So. 3d at 77.

The notice was mailed by first-class, pre-paid U.S. postage to "Side By Side Redevelopment, Inc. C/O William W. Alden" at 2930 Canal Street, Suite 401, New Orleans, Louisiana, which is the address registered with the Louisiana Secretary of State's Office.  Id. (footnote omitted).  The post-tax sale notice included notice of the sale of 2320 Delachaise Street to Stow-Serge for 2013 delinquent taxes, listing the tax bill number 614322309 and recorded instrument number 04-16955. It further notified SBS of their right to redeem the property that would expire on October 27, 2017. It left a contact number for questions and an address and email address of a person with which they could redeem their property.  Considering the foregoing, this Court concluded that "[u]nder these undisputed facts, an effort meeting the requirements of due process of law to provide notice in accordance with La. R.S. 47:2156 was made" and therefore, "SBS was duly notified of its redemptive rights in accordance with La. R.S. 47:2122(4)." *Stow-Serge*, 2020-0015, p. 7, 302 So. 3d at 77.

SBS argued, however, that the post-sale redemptive notice was not sufficient because it did not actually receive the December 5, 2014 notice, relying on an affidavit of Raquel Wilbert, who stated that she worked the front desk for Suite 401 and did not deliver any mail addressed to SBS to Dr. Alden.  This Court found the argument "disingenuous as the address caption on the letter included Dr. Alden by name," but found that fact was "not material because actual notice to the person is not required under La. R.S. 47:2122(4)." *Id*.

Second, SBS argued that the notice was not legally sufficient because it did not state the amount of taxes due as set forth in La. R.S. 47:2156(B)(2). This Court found "it is clear from the language in the statute and the 2008 comments that La. R.S. 47:2156(B)(2) is directory in nature and provides a safe harbor for compliance with the statutory mandates", and "[m]oreover, there is no penalty provided for failure to comply with the directives set forth in La. R.S. 47:2156 because it is not fatal to the legal sufficiency of the notice." *Id*. at p. 8, 302 So. 3d at 78.

notice of the date of expiration of that right, and the tax bill and instrument number by which to identify the amount owed, and therefore met due process requirements.

While Ms. deVille correctly asserts that this Court has recognized that a copy of a tax deed amounts to *prima facie* evidence of the tax sale's validity, *Patton*, 2017-0151, p. 12, and the burden was on the Waiters to establish otherwise, we note that the tax sale itself evidenced Ms. deVille's non-compliance with La. R.S. 43:203, as the first date of notice was less than thirty (30) days before the tax sale. While Ms. deVille argues that it is a relative nullity, this is of no consequence, as it is impossible for Ms. deVille to cure the non-compliance at this point.

Additionally, in *Deichmann v. Moeller*, 2018-0358, 2018 WL 6823153 at *3 (La. App. 4 Cir. 12/28/18), *writ denied*, 2019-0162 (La. 3/25/19), 267 So. 3d 601 (citing *Mooring Tax Asset Group, L.L.C. v. James*, 2014-0109, p. 5 (La. 12/9/14), 156 So. 3d 1143, 1145), this Court acknowledged that "Louisiana courts continue to recognize an 'absolute nullity' where pre-tax-sale notification requirements have not been met, notwithstanding the provisions of La. R.S. 47:2286." *Id.* (citing *Mooring Tax Asset Group, L.L.C. v. James*, 2014-0109, p. 5 (La. 12/9/14), 156 So.3d 1143, 1145; *Surcouf v. Darling*, 2015-0278, p. 11 (La. App. 4 Cir. 10/21/15), 177 So.3d 1085, 1092). *Deichmann* involved a motion for judgment on the pleadings. The plaintiff, Greg A. Deichmann, Sr., "admitted that pre-tax-sale publication requirements were not met", and "the pleadings fail[ed] to establish that pre-sale notice requirements were met." *Deichmann*, 2018-0358, 2018 WL 6823153 at *4.

This Court "therefore reverse[d] the district court's judgment declaring the tax sale a 'nullity' to specify that the tax sale in this case was an absolute nullity." *Id*. (quoting *Engine 22, LLC v. Land & Structure, LLC*, 2016-0664, pp. 5-6 (La. App. 4 Cir. 4/5/17), 220 So. 3d 1, 5 ("A tax sale without proper notice is an absolute nullity")).

Ms. deVille's reliance on *Stow-Serge* bolsters her assertion that her tax sale deed is *prima facie* evidence of a genuine issue of material fact; however, the trial court did not solely look at the deed. The trial court also considered the circumstances surrounding the deed such as Ms. deVille's lack of completion of the steps required for acquisitive prescription.

*Nullity*

Ms. deVille also relies on La. R.S. 47:2287(D), which provides,[14] "[t]o the extent the interest of the person asserting a nullity has not been terminated, or if the property remains subject to the interest pursuant to this Chapter, including without limitation R.S. 47:2121(C)(2) or other applicable law, such fact shall be an absolute defense to the action of nullity." Therefore, Ms. deVille contends, if there is an issue of material fact as to the Waiters' ownership of the property, there is also a genuine issue of material fact as to the Waiters' standing to invoke the alleged relative nullity of the Tax Sale Deed. Ms. deVille reiterates that she attached the Administrator's petition for authority to sell the Property and the trial court's October 18, 2018 signed Order authorizing the Administrator to advertise the sale of the Property.

---

[14] Ms. deVille also cites La. C.C. art. 2031, which provides, in part, that "[r]elative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative."

21

Ms. deVille submits that the trial court authorized the sale of the Property on the same day the Administrator filed the petition for authority, prior to the publication of notice of the application for authority, which was in violation of the statutory requirements of notice and publication for private sales of succession property, citing La. C.C.P. art. 3261, *et seq.* Therefore, Ms. deVille argues, the private sale of the Property to the Waiters is a nullity, which she, as a creditor of the succession and a tax sale purchaser, co-owner, and possessor of the Property, is entitled to invoke, citing *Hessick v. Petro Publications, Inc.*, 96-0034, p. 5 (La. App. 1 Cir. 11/8/96), 684 So. 2d 466, 470, wherein the First Circuit explained, "The *Hamilton* [*v. McKee*, 371 So. 2d 1115 (La.1979)] case makes it clear that an agreement to buy and sell succession property, **without** court approval, is a nullity." (emphasis added).[15] We note, however, that contrary to the holding in *Hessick* and Ms. deVille's assertion, in the prior appeal, this Court recognized that the cash sale of the Property to the Waiters was done **with** court approval. *Waiters I*, 2019-1048, p. 6, 299 So. 3d at 734.

*Fraud and Ill Practices*

Ms. deVille further argues that a genuine issue of material fact remains regarding whether the Order authorizing the sale by the successions to the Waiters is a nullity because of fraud or ill practices. She notes that in the hearing transcript from the Injunction, which she attached to her opposition, Ms. Waiters testified that she did not know Ruth Thompson, Beulah Mae Jefferson, or their families. Notwithstanding this fact, she asserts that Ms. Waiters signed an affidavit of death,

---

[15] Ms. deVille also cites La. R.S. 47:2287(D), which provides: "To the extent the interest of the person asserting a nullity has not been terminated, or if the property remains subject to the interest pursuant to this Chapter, including without limitation R.S. 47:2121(C)(2) or other applicable law, such fact shall be an absolute defense to the action of nullity."

domicile and heirship in the succession proceeding, stating she was familiar with them because her husband was going to go to the sale with the family. Thus, Ms. deVille contends that this establishes a genuine issue of material fact as to whether the Waiters conspired to defraud the successions by submitting a false affidavit of death, domicile, and heirship to induce the trial court to exercise jurisdiction and authorize the sale to Mr. Jamar Waiters.

The claim regarding fraud and ill practices was not asserted before the trial court and is being raised on appeal for the first time; thus, this Court will not address this claim. *See LHSAA v. State of Louisiana,* 12-1471, p. 15 (La. 01/29/13), 107 So. 3d 583, 596 n.13 (Louisiana appellate courts and the Supreme Court routinely refuse to consider arguments presented for the first time on appeal.). *See also,* La. Unif. R. Ct. App. 1-3.

*Duty to Advertise*

Ms. deVille also contends that there is no evidence that any record owner of the Property was not notified at least six months before the termination of the applicable redemptive period of three years[16] from the date of recordation of the Tax Sale Deed on February 12, 2010, relying upon La. R.S. 47:2121(C)(1), which provides:

> Tax sale title. (1) A tax sale confers on the tax sale purchaser, or on the political subdivision to which the tax sale property is adjudicated, only tax sale title. If the tax sale property is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interests, claims, or encumbrances held by all duly notified persons. Tax sale title is fully transferable and heritable,

---

[16] La. Const. art. VII, sec. 25(B) provides, "The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption."

but any successor of a tax sale title takes it subject to any existing right to redeem the property, or to assert a nullity, to the extent and for the period of time that the right would have existed in the absence of the transfer or succession.

Ms. deVille further notes that La. R.S. 47:2241 provides that "[a]ll redemptive periods provided in the Louisiana Constitution shall be peremptive", and La. R.S. 47:2287 governs the prescriptive/peremptive periods to annul a tax sale on grounds of a redemption nullity and provides, in pertinent part:[17]

A. Any action to annul a tax sale on grounds of a redemption nullity shall be brought before the earlier of:

(1) Six months after a person is duly notified using a notice, other than the notice provided in R.S. 47:2156 that is sent between the time that the redemptive period ends and five years after the date of the recordation of the tax sale certificate.
(2) If a person is duly notified more than five years after the date of the recordation of the tax sale certificate, sixty days after the person is duly notified.

Ms. deVille contends that any right to redeem the Property was perempted upon termination of the redemptive period on February 12, 2013, at the latest, arguing that the tax sale deed evidences that pre-sale notice was mailed at least six months before the termination of the redemptive period.

In the motion for partial summary judgment, the Waiters averred that they filed a petition to annul a 1% tax sale deed held by Ms. deVille, who has not sought to confirm her title interest. In fact, in her answer and reconventional demand, Ms. deVille judicially admits that she failed to comply with the last step of La. R.S. 9:5633(A)(12) to perfect ownership, i.e., "[i]f there are improvements on the immovable, they shall be demolished or certificates of use and occupancy

---

[17] La. R.S. 47:2122(10) provides: (10) "Redemption nullity" means the right of a person to annul a tax sale in accordance with R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period.

shall be obtained within two hundred seventy calendar days after the date that corporeal possession was taken." Ms. deVille acknowledges that she failed to obtain a certificate of occupancy within 270 calendar days of taking possession as required by the statute. See *Waiters I*, fn. 9 &10.

The Waiters argued in their motion and accompanying memorandum that the tax sale deed upon which Ms. deVille relied was facially invalid because the advertisement did not comply with the requirements of the Louisiana Constitution, and therefore, Ms. deVille held only reimbursement rights under Title 47. The Waiters relied on the tax sale deed itself as evidence that there was a failure to comply with notice requirements, noting that the deed provided it was advertised "in the manner prescribed by law." The Waiters contend that the first advertisement was placed on November 21, 2009, and the second advertisement on November 28, 2009, which only allowed eleven days before the sale on December 2 and 3, 2009, which failed to satisfy the requirements of La. Const. art. VII, sec. 25 (A), which provides:

> (A) Tax Sales. There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, **shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs' sales, in the manner provided for judicial sales**. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made. (emphasis added).

The Waiters also rely on La. R.S. 43:203, which provides that tax sales shall be advertised in the manner provided for judicial sales, and states, in pertinent part:

> When publication is required by law of any notice of a judicial sale, or of the filing of a tableau of distribution, account, application for appointment or for authority, or of any other notice in a judicial proceeding:
>
> (1) When only one publication is required by the applicable code or statutory provision, the newspaper advertisement of such notice shall be published at least ten days before the date of the judicial sale, or the expiration of the delay allowed in the notice for the filing of an opposition or answer, or for any other appearance or act;
>
> (2) **When two publications are required of notice of a judicial sale by public auction, the first newspaper advertisement of such notice shall be published at least thirty days before the date of the judicial sale, and the second advertisement shall be published not earlier than seven days before, and not later than the day before, the judicial sale**;
>
> \*     \*     \*     \*
>
> In computing the required interval of time after the advertisement provided in Paragraph (1) of this Section, or after the first advertisement provided in Paragraph (2) of this Section, neither the date of such advertisement nor the date of the expiration of the delay, or the date of the judicial sale, as the case may be, is included. In computing the required interval of time after the first advertisement provided in Paragraph (3) of this Section, neither the date of such advertisement nor the date of the commencement of the delay for the filing of an opposition thereto is included. (emphasis added).

Thus, the Waiters argued two separate advertisements are required, the first of which must take place at least thirty days before the tax sale, and the second advertisement within seven days prior to the sale. In this case, the Waiters emphasized that because the first advertisement, as established by the tax sale deed itself, was placed on November 21, 2009, the thirty-day delay did not lapse until

26

December 21, 2009, after the December 3, 2009, tax sale.[18]  In sum, the Waiters argued that the advertisement was not in compliance with the law.

The Waiters rely on *Western Lands Co. v. Lindsay*, 307 So. 2d 412 (La. App. 4th Cir. 1975), in which this Court invalidated a tax sale for an advertisement error similar to the one alleged in this case, holding that a sale made before the lapse of thirty (30) days from the date of the first advertisement rendered the sale invalid.  In *Western Lands Co.*, the plaintiff, Western Lands Company, filed a suit to annul a tax sale on property it purchased from Walter Charles Wente in 1971. In 1966, the land had been sold for unpaid taxes assessed against Wente.  The plaintiff, as subrogee of the tax debtor, alleged Wente was not notified as required by law, and therefore, the tax sale was a nullity. When the plaintiff attempted to confirm a default judgment to this effect, the plaintiff's suit was dismissed.

On appeal, in *Western Lands Co.*, this Court recognized the following exhibits that were filed into the record:

> 1. A certified copy of an act of sale dated November 10, 1928, conveying title to Walter Charles Wente, the tax debtor.
> 2. A conveyance certificate issued by a notary public for the Parish of St. Charles, dated March 11, 1974, showing a tax sale of Square No. 34, Section C, Lakeland Gardens on June 13, 1966.
> 3. A letter issued by a deputy tax collector in the St. Charles Parish Sheriff's office stating (a) an order of the Louisiana Tax Commission (dated January 11, 1966) directed the omitted property be entered on the tax rolls in the name of Walter Charles Wente, without furnishing an address; (b) two newspaper advertisements (one on January 27, 1966 and the other on February 3, 1966) were run in an attempt to locate the tax debtor; and (c) when these ads produced no results, the property was advertised as required by law and sold for taxes on June 11, 1966.

---

[18]  This portion of the Waiters' motion contains typographical errors with respect to the dates.

> 4. A copy of the tax deed reciting, inter alia, that notice to the tax debtor was mailed and published, and due notice of the tax sale to be held on June 11, 1966 was advertised in the official journal on May 12 and June 9, 1966—all of the foregoing as required by law.
> 5. A true copy of the sale from the tax debtor to plaintiff dated June 9, 1971.
> 6. A true copy of the sale from Brown Title Corporation (the tax purchaser's vendee) to Mrs. Janet Begg.

*Western Lands Co.*, 307 So. 2d at 413-414.

Two publications were made within ten (10) days (January 29 and February 3, 1966), thereby fulfilling the requirements for the listing and assessment of omitted property of unknown owners. Apparently, however, the advertisements of the June 11, 1966 tax sale were published on May 12 and June 9, 1966.

This Court has recognized that advertisements for judicial sales of immovable property are governed by La. R.S. 43:203, which requires two (2) publications, one (1) at least thirty (30) days before the sale, and the second, not earlier than seven (7) days or later than the day before the judicial sale. *Id.* This Court held that there was noncompliance because the sale was held on the thirtieth day after the first advertisement appeared, and "**noncompliance with either of these mandatory provisions of our statutes strikes the tax adjudication with nullity.**" *Id.* (emphasis added).

Ultimately, however, "because of the unusual circumstances," this Court did not "pass upon the validity of the tax sale but [felt] constrained to remand it to the trial court for further proceedings."[19] *Id.*

---

[19] The *Western Lands Co.* Court explained its reasoning was based on several factors:

> Our action is prompted by several factors; (1) This is a default proceeding and the only litigant before the court is seeking to invalidate the tax sale. (2) The documentary proof that suggests the notice requisites were not met is secondary evidence, i.e. a letter from the deputy tax collector and the tax deed. The best

The Waiters also relied on *San Roman Enterprises, Inc. v. Plaisance*, 01-1082 (La. App. 5 Cir. 12/26/01), 806 So. 2d 788, wherein the Fifth Circuit specifically relied on *Western Lands Co.*, 307 So. 2d 412, in holding that the improper placement of the advertisement rendered the tax sale a nullity.

In *San Roman Enterprises*, the tax sale occurred on October 31, 1995, and the first advertisement appeared on October 12, 1995. The second advertisement appeared on October 26, 1995. Thus, the Fifth Circuit recognized there was "no question that the timing of the first advertisement d[id] not conform to the requirements of La. R.S. 43:203", as "[t]here were only twenty-two days between the first advertisement and the actual sale." *San Roman Enterprises*, 01-1082, p. 2, 806 So. 2d at 790. The court also noted that "La. R.S. 43:203 is a mandatory provision dealing with the tax sale of immovable property." *Id*.

The Waiters emphasized that the cash sale of property on November 12, 2018, from the Successions of Ruth Thompson and Beulah Mae Jefferson to the Waiters was the same author of title upon which Ms. deVille holds her tax title,

---

evidence of such notice—a certificate of publication together with a copy of the advertisement—might produce a different result. (3) Plaintiff acquired the tax debtor's interest for $200 on June 9, 1971, four days before the expiration of the five-year peremption period (LSA-Const., Art. 10 § 11) and filed suit two days later, also within this prescribed time limit. At the time of suit the tax purchaser had divested himself of title to the Brown Corporation, who on March 14, 1969 (also prior to the filing of the nullity action) conveyed title to the defendant Beggs for $3,750. The Beggs were not made parties defendant by supplemental petition until November 7, 1973. No return of service of the original and/or supplemental petition and citation on Beggs is in the record. Preliminary default against Beggs was entered on February 12, 1974 and the judgment dated May 1, 1974 dismissed the plaintiff's suit.

*Id.*, 307 So. 2d at 413-414.

citing La. C.C.P. art. 3654.[20]  Additionally, the Waiters attached an Amended

Judgment of Possession in the Succession of Vernon Thompson, who acquired the

subject property with his wife Ruth Thompson, by sale on November 23, 1960.

Thus, they contended, they established an unbroken chain of ownership for over

fifty (50) years, while in contrast, Ms. deVille had no ownership interest in the

subject property.[21]

*Ownership*

Throughout her brief, Ms. deVille continuously argues that the issue of

ownership is a genuine issue of material fact due to the trial court's silence on the

matter. As noted previously herein, the trial court's written judgment did not

indicate that the Waiters' motion for partial summary judgment was granted in

part.  In fact, the trial specifically found that "the tax sale conducted on December

2, 2009, and December 3, 2009, memorialized by a tax sale deed from Thompson

Ruth Et Al to Renee deVille…[as] null and void." Thus, if the tax sale giving rise

---

[20] La. C.C.P. art. 3654 provides:

> When the issue of ownership of immovable property or of a real
> right therein is presented in an action for a declaratory judgment,
> or in a concursus, expropriation, or similar proceeding, or the issue
> of the ownership of funds deposited in the registry of the court and
> which belong to the owner of the immovable property or of the real
> right therein is so presented, the court shall render judgment in
> favor of the party:
>> (1) Who would be entitled to the possession of the immovable
>> property or real right therein in a possessory action, unless the
>> adverse party proves that he has acquired ownership from a
>> previous owner or by acquisitive prescription; or
>> (2) Who proves better title to the immovable property or real right
>> therein, when neither party would be entitled to the possession of
>> the immovable property or real right therein in a possessory action.

[21] Ms. deVille also argues that the Waiters should be precluded from attacking publication due to prescription/peremption.  Just as with the assertion of fraud and ill practices, Ms. deVille failed to file exceptions of prescription or peremption before the trial court, and is raising the issue before this Court for the first time. Since this argument was not asserted before the trial court and is being raised on appeal for the first time, this Court will not address this claim. *See LHSAA,* p. 15, 107 So. 3d at 596 n.13 and La. Unif. R. Ct. App. 1-3.

to Ms. deVille's 1% ownership is null and void, then logically her ownership in the property is likewise null and void. Ms. deVille's argument that there still exists a genuine issue of material fact with respect to her ownership in light of the clear language of the judgment is without merit.

Thus, based on all of the aforementioned, we find that the trial court did not err when it found no genuine issue of material fact to conclude the tax sale null and void and granted summary judgment in favor of the Waiters as to this issue.

*Fixing of Costs*

Finally, Ms. deVille argues that the trial court erred in declaring that the tax sale deed is null and void because the tax laws require courts to fix costs allowed to the tax sale purchaser and require the plaintiff to pay those costs before a judgment annulling a tax sale has effect, citing La. Const. art. VII, sec. 25(C), which provides:

> (C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.

Furthermore, the Louisiana Supreme in applying the aforementioned constitutional provision in *Mooring Tax Asset Group, LLC v. James*, 2014-0109,

31

p. 10 (La. 12/09/14), 156 So. 3d 1143, 1150 specifically held that the constitutional provision does not allow for the immediate cancellation of a tax sale deed without also setting the amount of costs due to the tax purchaser. Thus, even though the trial court was correct in granting the motion for partial summary judgment, it had no authority to cancel the tax sale deed, without first fixing the redemptive costs, via a contradictory hearing, owed to Ms. deVille as asserted in her reconventional demand. Therefore, based upon this failure, we grant the writ to stay the execution of the judgment of the trial court, which ordered the tax sale null and void, until redemptive costs are fixed and paid.

Ms. deVille also argues that the trial court erred in granting the Waiters' motion for partial summary judgment because there has not been an opportunity for adequate discovery, citing La. C.C.P. art. 966(A)(3). The trial court, in dismissing Ms. deVille's discovery assertion, noted at the hearing that the case records were extensive, and it had heard extensive testimony from the parties in this case. Furthermore, Section (A)(1) of La. C.C.P. art. 966 states that "[a] plaintiff's motion [for summary judgment] may be filed any time after the answer has been filed", which is the case presently. Thus, we find this argument lacks merit.

For all of the aforementioned reasons, we find that the trial court did not err in hearing and granting the Waiters' motion for partial summary judgment declaring the tax sale null and void. However, insofar as the judgment does not simultaneously fix redemptive costs, we stay the execution of the trial court's ruling until redemptive costs are fixed and paid by the Waiters.

### III.    The Injunction

We now turn to Ms. deVille's assignments of error numbers two (2) through seven (7) to determine whether the trial court erred when it granted the Injunction in favor of the Waiters and against her.  For ease of discussion and because they are interrelated, all six (6) of these assignments of error will be discussed together herein.

*Bond/Security*

Ms. deVille first asserts that the trial court erred by issuing the Injunction without requiring the Waiters to furnish security. Pursuant to La. C.C.P. art. 3610 a court shall not issue a preliminary injunction unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. *See also Bogalusa Ice Co. v. Moffett*, 188 La. 598, 604, 177 So.679, 681 (1937). When a preliminary injunction is issued without security, the remedies include setting aside the injunction and remanding the case to the trial court for "full treatment of the preliminary injunction and security issues" or, the appellate court may remand the case to the trial court for the "fixing of security." *High Plains Fuel Corp. v. Carto Int'l Trading, Inc.*, 640 So. 2d 609, 615 (La. App. 1st Cir. 1994)(citations omitted).

In the present matter we find that the trial court erred by granting the Injunction without requiring security from the Waiters. We find no statutory or jurisprudential support absolving the Waiters from posting security. Notwithstanding the aforesaid, while the Waiters assert they are not required to furnish security, during the pendency of the instant writ applications, on October 5, 2020, the Waiters filed a "Motion to Supplement Record" requesting to allow them to have a bond set. This Court, after granting Ms. deVille an opportunity to object,

to which she asserted that she had no position on the motion, granted the motion on December 2, 2020. Thereafter, the Waiters posted security and thereby caused this assignment of error to become moot.

*Prohibitory v. Mandatory Injunction*

With regard to the Injunction, Ms. deVille asserts that the trial court erred in four ways: (1) granting a permanent mandatory injunction through a hearing instead of a trial on the merits; (2) issuing an injunction divesting Ms. deVille of possession of the Property without prior reimbursement for expenses and improvements associated with the Property; (3) issuing an injunction without proof that the Waiters would suffer irreparable injury and (4) issuing a preliminary injunction without proof that the Waiters would prevail on the merits.

Preliminarily, we recognize that "the standard of proof required to meet the elements for a preliminary injunction differs [depending] upon whether the preliminary injunction sought is a prohibitory injunction or mandatory injunction." *Ard v. Grrlspot, LLC,* 2019-0312, p. 7 (La. App. 4 Cir. 10/23/19), ---So. 3d---, ---, 2019 WL 5432098 (citing, *Denta-Max v. Maxicare Louisiana, Inc.,* 1995-2128, p. 3 (La. App. 4 Cir. 03/14/96), 671 So. 2d 995, 997.) "A mandatory injunction is one which orders the doing of something." *Id.* "On the other hand, a prohibitory injunction seeks to restrain conduct." *Id.* This Court in *Meredith v. I Am Music, LLC,* 2018-0659, pp. 5-6 (La. App. 4 Cir. 02/13/19), 265 So. 3d 1143, 1146 explained the pertinent differences between a prohibitory and mandatory injunction as follows:

> '[A] prohibitory injunction, which simply preserves the status quo until a full trial on the merits, may be issued on a *prima facie* showing by the party seeking the injunction.' [*Denta-Max*, 1995-2128, p. 3, (La. App. 4 Cir. 03/14/96), 671 So. 2d at 997]. A mandatory

injunction, however, has the same basic effect as a permanent injunction, and may not be issued on merely a prima facie showing that the party seeking the injunction can prove the necessary elements. *Id.* 'Instead, the party seeking a mandatory injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction.' *Id.* (citing *Bollinger Mach. Shop & Shipyard, Inc. v. U.S. Marine, Inc.*, 595 So. 2d 756, 759 (La. App. 4 Cir. 1992).

For the purposes of an evidentiary hearing, parties should be allowed to conduct discovery so they may adequately prepare for the hearing. *See Dore v. Jefferson Guaranty Bank*, 543 So. 2d 560, 562 (La. App. 4 Cir. 1989). Notice of the nature of the hearing is required so the parties may adequately prepare. *Id.* This Court in *Dore* addressed whether a mandatory injunction to prevent continuing trespass on the property was proper. *Id.* This Court reasoned mandatory injunctive relief can be offered after an evidentiary hearing. *Id.* The hearing held by the trial court was considered a full hearing because both parties were given notice of the type of hearing to be conducted and offered the opportunity to present their case. *Id.* Both parties were present at the hearing and allowed to present evidence and cross examine witnesses. *Id.* This Court affirmed the granting of the preliminary judgment. *Id.* At 563.

Based on the aforementioned jurisprudential authorities, and the language of the trial court's judgment,[22] we find that the trial court converted the preliminary injunction--which maintains the status quo--to a prohibitory/mandatory injunction--which orders an act, without a full evidentiary hearing, i.e., a trial. We find that in doing so, the trial court committed manifest error. Although a hearing was held, it was not an evidentiary hearing as contemplated by jurisprudential authorities, vis-

---

[22] The judgment stated, in pertinent part "Renee deVille and anyone acting on her behalf is prohibited from possessing the premises at 4609-11 Freret Street and to be removed from the premises."

35

a-vis, after discovery and all other pre-trial mechanisms that must take place prior to a trial. Therefore, since the requisite evidentiary hearing was not provided, we grant Ms. deVille's writ and vacate the Injunction.

Having determined that the Injunction was a mandatory permanent injunction that requires the matter to be remanded to the district court for a full evidentiary hearing, we pretermit consideration of the remaining assignments of error raised by Ms. deVille.

## IV.    Award of Reasonable Attorney's Fees

Ms. deVille requests an award of reasonable attorney's fees for the wrongful issuance of the mandatory injunction. Louisiana Code of Civil Procedure article 3608 controls the award of damages when a preliminary injunction has been wrongfully issued. The article provides, in pertinent part:

> The court *may* allow damages for the wrongful issuance of…a preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a…preliminary injunction may be included as an element of damages whether the…preliminary injunction is dissolved on motion or after trial on the merits. (emphasis added).

Furthermore, the Louisiana Supreme Court in *Arco Oil & Gas Co., a Div. of Atl. Richfield Co. v. DeShazer*, 98-1487 (La. 1/20/99), 728 So. 2d 841, 843–44, stated the following:

> Focusing on the plain language of Article 3608, it is clear from the legislature's use of the word "may" that the provision which authorizes assessment of damages for the wrongful issuance of injunctive relief is not mandatory in its application. Rather, a trial judge may use his discretion when determining whether to award damages. Therefore, the ruling of a trial judge on the issue of damages under Article 3608 should not be disturbed on appeal absent a clear abuse of discretion.

36

Based on the aforementioned jurisprudential and statutory authorities, we remand to the trial court for a determination of whether attorney's fees should be awarded and if applicable, what amount should be awarded.

## CONCLUSION

For the foregoing reasons, the appeal of the Injunction is converted to an application for supervisory writs and consolidated with the writ regarding the motion for partial summary judgment. We grant the writ application, deny relief, in part, stay the judgment of the trial court in part, vacate the judgment of the trial court in part and remand this matter for further proceedings consistent with this opinion.

**APPEAL CONVERTED TO A WRIT;**
**WRIT GRANTED; RELIEF DENIED IN PART;**
**JUDGMENT STAYED IN PART;**
**JUDGMENT VACATED IN PART AND REMANDED**